IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANNA MILLER, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 20 C 5473 |
| LEWIS UNIVERSITY, ) ) | |
| Defendant. ) | |

CORRECTED
MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Lewis University has moved to dismiss Brianna Miller's first amended complaint. Miller—on behalf of herself and others—has sued Lewis alleging breach of contract (Count 1) and unjust enrichment (Count 2). She claims the University entered into a contract with her to provide, among other things, in-person classes and on-campus services. In Miller's view, she fulfilled her obligations under the contract by paying tuition. She claims Lewis breached the contract when, in response to the COVID-19 pandemic, it transitioned to remote instruction.

Though the Court is sympathetic to all who have been aggrieved by the pandemic, not all grievances are redressable by courts of law. As explained below, Miller has failed to state a claim upon which relief may be granted, so the Court grants Lewis's motion.

## Background

Lewis is a private Catholic university located in Romeoville, Illinois. It educates approximately 6,400 undergraduate and graduate students. Lewis—in normal times—offers both a traditional, in-person student experience as well as an online learning experience. Miller was a traditional student at Lewis. She began in fall 2016 and graduated in spring 2020.

During the spring 2020 semester, as the country began confronting the COVID-19 pandemic, Lewis made several changes to its academic program. On March 12, 2020, the University announced that "[a]ll courses originally scheduled to be face-to-face will be delayed by one week, resuming in a fully online format on Monday, March 23." Am. Compl. ¶ 4. At the time, Lewis had not decided whether face-to-face learning would resume. But, on March 19, 2020, the University determined that the remainder of the 2020 school year (spring and summer terms) would be "delivered through online only learning methods." Id. ¶ 4. Lewis also told students that "residence halls would remain closed through the conclusion of the summer terms." Id.

Miller does not take direct issue with the University's elimination of in-person learning. See id. ¶ 8. Instead, she challenges Lewis's decision to "retain monies paid by [her and those she wishes to represent] when [Lewis] failed to provide [ ] in-person and on-campus classes and services." Id. For the spring 2020 semester, Miller paid approximately $16,860 in tuition and mandatory fees. She has not been given a partial refund for the value of the in-person classes that were moved online, nor has she received a partial refund for the mandatory fees she paid despite Lewis's discontinuation of on-campus services. Miller asserts that Lewis's failure to provide an

in-person education and on-campus services, while also retaining the full amount of her tuition and fees, constitutes a breach of contract and unjust enrichment.

Central to her breach-of-contract claim is Miller's allegation that she entered into a contract with Lewis under which, in exchange for tuition and fees, Lewis "would provide in-person and on-campus educational services, experiences, opportunities, and other related services." *Id*. ¶¶ 35, 70. According to Miller, the terms of this contract are set forth in various "marketing materials, advertisements, publications, and other documents from [Lewis], including but not limited to the Lewis University Course Schedule." *Id.* ¶ 70.

With regard to her unjust enrichment claim, Miller claims that she paid tuition and fees "with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Defendant had previously marketed, promoted, or made available prior to COVID-19." *Id.* ¶ 84. In her view, by retaining the full amount of tuition and fees even after failing to provide the benefits that Miller and her classmates expected, the school was unjustly enriched at her and others' expense.

Miller seeks compensatory damages, disgorgement, equitable relief, and other forms of relief.

## Discussion

To survive a motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal quotation marks omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (internal quotation marks omitted).

When ruling on a motion to dismiss, the court must construe "all well-pleaded allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (alterations accepted) (internal quotation marks omitted). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A.     Educational malpractice**

Lewis contends in its motion that Miller's breach-of-contract claim is really an educational malpractice claim, which is not cognizable under Illinois law. *See Waugh v. Morgan Stanley & Co.*, 2012 IL App (1st) 102653, ¶¶ 28–44, 966 N.E.2d 540, 549–54 ("If a claim raises questions about the reasonableness of an educator's conduct in providing educational services, or if a claim requires an analysis of the quality of education, it is a claim for educational malpractice" and "the tort of educational malpractice is not recognized in Illinois.") The Court disagrees.

In this context, to state a viable claim for breach of contract—and therefore avoid a claim sounding in educational malpractice—"the plaintiff must do more than simply allege that the education was not good enough." *See Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992). Rather, the plaintiff must allege that the educational institution "failed to perform [a promised educational] service at all." *Id.* Miller has done that here. She alleges that she was promised an in-person learning experience, paid for it, did not receive it, and should recover damages as a result. In other words, Miller has put

4

forward a fairly straightforward breach-of-contract claim.

Lewis contends that Miller must be alleging a difference in the quality between the in-person education she wishes she had received and the online education she received, or else her claim could not stand. But just because Miller argues that an online education does not have the same value as an in-person education does not mean that she is challenging the quality of the education she received. Instead, to the extent she discusses the difference in "market value" between in-person and online education, "that discussion is limited to alleging damages from the defendant's alleged breach of contract, not an allegation that any decreased value *constitutes* the breach of contract." *See Oyoque v. DePaul Univ.*, No. 20 C 3431, 2021 WL 679231, at *2 (N.D. Ill. Feb. 21, 2021) (Kennelly, J.). This is markedly different from claiming educational malpractice. *See Waugh*, 2012 IL App (1st) 102653, ¶ 29, 966 N.E.2d at 549 (listing the three "broad categories of educational malpractice claims: '(1) the student alleges that the school negligently failed to provide him with adequate skills; (2) the student alleges that the school negligently diagnosed or failed to diagnose his learning or mental disabilities; or (3) the student alleges that the school negligently supervised his training.'").

To summarize, Miller's breach-of-contract claim does not sound in educational malpractice because her complaint does not challenge the adequacy of the education she received, and the resolution of her claim would not require "second-guessing the professional judgment of the University faculty on academic matters." *See Ross*, 957 F.2d at 417.

## B.     Breach of contract (Count 1)

Next, the Court considers whether Miller has stated a claim for breach of contract. In Illinois, a plaintiff claiming breach of contract must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotation marks omitted).

As discussed above, in the educational context plaintiffs "must do more than simply allege that the education was not good enough. Instead, [plaintiffs] must point to an identifiable contractual promise that the [educational institution] failed to honor." *Ross*, 957 F.2d at 416–17; *see also Charleston v. Bd. of Trs. of Univ. of Illinois at Chicago*, 741 F.3d 769, 773 (7th Cir. 2013) ("[T]he student's complaint must be specific about the source of [the] . . . contract, the exact promises the university made to the student, and the promises the student made in return."). "The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become a part of the contract." *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (internal quotation marks omitted); *see also DiPerna v. Chicago Sch. of Prof'l Psychology*, 893 F.3d 1001, 1006–07 (7th Cir. 2018) ("In Illinois, 'a college or university and its students have a contractual relationship, and the terms of the contract are generally set forth in the school's catalogs and bulletins.'").

### 1.     Materials expressing intention, hope, or desire

Though Lewis concedes that the parties have an "inherently contractual" relationship, it argues that Miller has not sufficiently alleged that the University made a promise to provide in-person classes. The Court agrees. In her complaint, Miller cites

6

to various "marketing materials, advertisements, and other documents" that "highlighted" Lewis's "in-person educational opportunities, experiences, and services." *See* Am. Compl. ¶¶ 19, 24, 70, 71.  But "promotional materials"—i.e., marketing materials or advertisements—"are not among the terms of the contract between universities and their students."  *See Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *6 (N.D. Ill. Feb. 4, 2019) (citing *DiPerna*, 893 F.3d at 1006–07)); *see also Bissessur*, 581 F.3d at 602.

Miller cites to portions of Lewis's website to claim that the it "actively markets [its] on-campus experience and opportunities as a benefit to students."  *See* Am. Compl. ¶¶ 21–22 (statements describing, for example, Lewis's "active campus with opportunities for personal development" and "impressive academic facilities.").  These are clearly promotional materials and cannot become part of the contract between Miller and Lewis.  But even if that weren't true, and promotional materials could be considered, advertising a "safe and welcoming campus," "an inviting community . . . . [w]ith more than 100 clubs and organizations," and "'well-equipped classrooms,'" Am. Compl. ¶ 21, is not the same making a "definite" and "concrete promise," *see also Galligan*, 2019 WL 423356, at *7 (internal quotation marks omitted).  Instead, the vast majority of Miller's cites to the Lewis website involve "puffing" statements, "meaning they were not concrete promises that could comprise part of a contract between student and university."  *See id.* at *6; *see also id.* at *4 ("'Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined.'")

Next, Miller points to the executive summary of Lewis's strategic plan, which she

7

says is distinct from promotional materials. But strategic plans are not among the documents that may be considered as part of the contracts between students and educational institutions. *See Bissessur*, 581 F.3d at 602 ("The 'catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant may become a part of the contract.'"). In any event, the executive summary contains no concrete statements committing the University to definite actions. *See* Am. Compl. ¶ 21. Instead it is filled with "expression[s] of intention, hope or desire" and cannot be a part of Lewis's contract with its students. *See Galligan*, 2019 WL 423356, at *7 (internal quotation marks omitted). For example, the fact that Lewis intends to "advance transformative life experiences; experiential learning opportunities and a campus setting that creates a distinctive and relevant student experience" is of no consequence here. *See Strategic Plan 2017–2022: Executive Summary*, Lewis University, https://www.lewisu.edu/welcome/strategic-plan.htm.[1] That intention is an unenforceable aspiration, not an enforceable promise that Miller or any other student can enforce against Lewis in a court of law. *See Galligan*, 2019 WL 423356, at *7 (finding an institution's commitment to ensuring that "qualified students with disabilities are afforded reasonable accommodations" was definite enough to make it a "concrete promise rather than an 'unenforceable expression'").

     Miller's reliance on Lewis's statements about its Air Traffic Control certificate program, College of Aviation, Science and Technology, College of Business, and College of Education and Social Science does nothing to advance her claim. Miller

---

[1] Though she quotes only a few words of the executive summary in the body of her complaint, Miller also cited the web address for the full executive summary. *See* Am. Compl. ¶ 21.

does not allege that she was enrolled in any of these programs, but even if she was, one need only look at the statements as published to know that these too were promotional materials. Even if these promotional materials could be considered, the marketing of "classroom instruction," "laboratory simulations," "hands-on learning," and "state-of-the-art facilities," *see* Am. Compl. ¶ 23, without more, is not the same as making a "definite" and "concrete promise" to provide an in-person education. *See Galligan*, 2019 WL 423356, at *7.

2. **Lewis's spring 2020 course schedule**

Miller also cites to Lewis's spring 2020 course schedule to support her breach-of-contract claim. As part of the recurring course registration process, Lewis publishes the upcoming term's course schedule, which lists the courses being offered along with associated fees, as well as various policies. For each class in the schedule there is a notation explaining which instructional method will be used to teach the course. For spring 2020, course instructional methods included traditional, "face-to-face" learning, online learning, blended learning (a mixture of face-to-face learning and online), and multi-option courses (students could move between face-to-face and online). *See* Am. Compl. ¶ 31. Miller was enrolled in traditional courses before the pandemic forced the University to change plans.

Miller argues that the course schedule contains a promise for an in-person education because when students enrolled in classes, they were invited to select courses that used a specific instructional method including traditional (face-to-face) learning. But the spring 2020 schedule contained an important reservation: though "[t]he information contained in th[e] schedule was accurate on October 22, 2019 . . . [it

9

was] subject to change without notice." Def.'s Ex. A-3 at ECF p. 42.[2]  Moreover, Lewis reserved "the right to cancel any course . . . and to make any schedule changes required including change of class time, location or instructor." *Id.* In light of this reservation, Lewis claims that the course schedule cannot contain any enforceable promises. Lewis also argues that the notations regarding instructional method are not enough to form a contractual promise.

The Court agrees with Lewis. The notations are "hardly sufficient to form a binding contract" as they cannot be confused with definite and concrete promises. *See Gociman v. Loyola Univ. of Chicago*, No. 20 C 3116, 2021 WL 243573, at *4 (N.D. Ill. Jan. 25, 2021) (holding that parentheticals in a course catalog were not promises that courses for which students registered would be delivered on-campus). Without more, these notations are informative rather than promissory and Miller cannot transform such statements into a binding contract.[3] *See Abrams v. Illinois Coll. of Podiatric Med.*, 77 Ill. App. 3d 471, 477, 395 N.E.2d 1061, 1065 (1979) (holding that a particular provision of

---

[2] Though Miller did not allege the course schedule reservation in her complaint it is "well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'" *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Because Miller incorporated the course schedule by reference in the complaint, the court may consider that document, which Lewis attached to its motion to dismiss.

[3] Miller also argues that the University created a specific contract term by custom. *See Ross*, 957 F.2d at 417 ("[C]ustom and usages can also become specific terms by implication."). This argument is unavailing as evidence of "[c]ustom and usage may only be relied upon to interpret an agreement if the practice was 'so well known, uniform, long-established and generally acquiesced in as to induce the belief that the parties contracted with reference to it.'" *Gray v. Mundelein Coll.*, 296 Ill. App. 3d 795, 805, 695 N.E.2d 1379, 1386 (1998). Because the notations are not promises, evidence of custom and usage are not necessary to interpret their meaning.

the institution's student handbook was not a promise but rather an "unenforceable expression of intention, hope or desire" because "it was not communicated to the plaintiff in such a way as to invite the payment of tuition in reliance" and therefore "plaintiff did not have the power to transform [it] into a binding contractual obligation.").

Miller's attempt to read into the course schedule a promise to provide an in-person education is further undermined by the fact that it is "plainly inconsistent with the document itself." *See Gociman*, 2021 WL 243573, at *4. This is true mainly because Miller cannot sidestep the schedule's unambiguous reservation permitting Lewis to "make any schedule changes required *including* change of class time, location or instructor." Def.'s Ex. A-3 at ECF p. 42 (emphasis added). Though Miller argues that the University didn't reserve the right to change the instructional method specifically, it didn't need to. The word "including," of course, typically denotes a non-exhaustive list, i.e. a part of the whole rather than the entirety. *See* Bryan A. Garner, *Garner's Modern English Usage* 500 (4th ed. 2016). The only way one can read the reservation to *explicitly exclude* the instructional method is by changing "including" to "involving," "limited to," "consists of," or something similar. But that is not what the schedule says.

Miller also asserts—without any support—that even if the reservation permitted Lewis to change the course schedule and manner of instruction, it did not allow Lewis to do so after courses began. But there is nothing in language of the reservation to support such a limitation. And the cases Miller relies on for this argument are inapplicable, as they involve courts applying different law under different circumstances. *See Saroya v. Univ. of the Pac.*, No. 5:20-CV-03196-EJD, 2020 WL 7013598, at *5 (N.D. Cal. Nov. 27, 2020) (applying California law to "look to the reasonable expectation

11

of the student at the time of contracting"); *Verlanga v. Univ. of San Francisco*, No. CGC-20-584829, 2020 WL 7229855, at *2 (Cal. Super. Ct. Nov. 12, 2020) ("The Court likewise denies USF's request for judicial notice of its catalog, including the refund policy and the university's reservation of rights to modify its regulations and programs.")

Finally, Miller argues that even if the Court does not agree with her interpretation of the reservation, it is subject to two reasonable interpretations and therefore may not be resolved on a motion to dismiss. *See Drennan v. Indiana Harbor Belt R. Co.*, No. 99 C 3371, 2001 WL 883659, at *4 (N.D. Ill. Aug. 6, 2001) ("If the relevant terms are susceptible to more than one reasonable interpretation, then the contract is ambiguous and the interpretation of the terms is a question of fact which cannot be resolved on a motion to dismiss."). The Court disagrees. There is nothing the least bit ambiguous about the language of the reservation allowing Lewis to make unilateral changes.

In sum, none of the materials Miller has identified is appropriately understood to constitute a binding contractual promise by the University to provide in-person educational services, experiences, or opportunities. As a result, count 1 fails to state a claim.[4]

### C. Unjust enrichment (Count 2)

Lastly, the Court will address Miller's unjust enrichment claim. Under Illinois law, a plaintiff states a claim for unjust enrichment when she alleges that the "defendant has

---

[4] Lewis provided additional arguments for dismissal of the breach-of-contract claim, including that the University's tuition agreement precludes a finding of breach of contract and that Miller failed to allege that the University's decision to transition to remote learning was arbitrary, capricious, or in bad faith. Because the Court has dismissed this claim on other grounds, it need not consider these additional arguments.

unjustly retained a benefit to the plaintiff's detriment and the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *See Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (alterations accepted) (internal quotation marks omitted). "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (2005) (internal quotation marks omitted). Accordingly, the remedy of unjust enrichment is unavailable "where there is a specific contract that governs the relationship of the parties." *Id.* (alterations accepted) (internal quotation marks omitted).

      Miller argues that her claim should survive because, although she alleges the existence of a contract, her claim for unjust enrichment is pleaded in the alternative. Generally, Illinois law permits a party at the pleading stage to plead claims in the alternative, including pleading an unjust enrichment claim as an alternative to a breach-of-contract claim. *See id.* However, "when the unjust enrichment claim is premised on a failure to fulfill contractual terms—which is the case here—this general rule does not apply, and dismissal of the unjust enrichment claim is appropriate." *Oyoque*, 2021 WL 679231, at *5; *see also id.* (citing cases). Because, Miller alleges the existence of a contract and Lewis does not dispute that there is one, the Court must dismiss Count 2. *See Team Impressions, Inc. v. Chromas Techs. Canada, Inc.*, No. 02 C 5325, 2003 WL 355647, at *4 (N.D. Ill. Feb. 18, 2003) (St. Eve, J.) (plaintiff's alternative unjust enrichment claim dismissed because it was premised on the defendant's failure to fulfill the terms of an express contract).

**Conclusion**

For the reasons stated above, the Court grants defendant's motion to dismiss [docket no. 28]. Unless Miller submits by April 26, 2021 a proposed amended complaint stating a viable claim over which this Court has jurisdiction, the Court will enter judgment in favor of the University. The case is set for a telephone status hearing on May 5, 2021 at 9:15 a.m. to set any necessary schedules for further proceedings, using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 11, 2021